UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ORLANDO MAURICE GLOVER #525093          CIVIL ACTION NO. 15-cv-2863

VERSUS                                  CHIEF JUDGE HICKS

N. BURL CAIN, ET AL                     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Orlando Maurice Glover ("Petitioner") was charged with two counts of attempted second-degree murder. A Caddo Parish jury returned a verdict of guilty to two lesser counts of attempted manslaughter. Petitioner was adjudicated a second felony offender and sentenced to concurrent sentences of 35 years. His convictions and sentences (with minor modification) were affirmed on appeal. State v. Glover, 106 So.3d 129 (La. App. 2d Cir. 2012), writ denied, 116 So.3d 659 (La. 2013). Petitioner also pursued a post-conviction application in state court. He now seeks federal habeas corpus relief on several grounds. For the reasons that follow, it is recommended that his petition be denied.

### Sufficiency of the Evidence

#### A. Relevant Evidence

James Maiden testified that he was in the parking lot of an apartment complex on Illinois Street in Shreveport when a man, later determined to be Petitioner, "was coming through the parking lot just driving fast" and "we had words." Maiden encountered

Petitioner the next day "and he was sitting outside of the apartment, we had words again." The men did not otherwise know each other.

Maiden testified that he was visiting friends at the apartment complex on September 14, 2007 when Petitioner approached his group and spoke to him. Maiden testified, "I heard when he said, don't play with him, and we just had words, and he just fired." Maiden estimated that Petitioner fired a handgun about five times, and both men ran after the shots were fired. Police later showed Maiden a photo lineup. He identified Petitioner as the shooter in the lineup, and again in court. Maiden admitted that he was on probation at the time of trial after pleading guilty in 2010 to attempted possession of a firearm with a controlled dangerous substance. Tr. 365-73.

Lucas Johnson testified that he was also present at the shooting. He was hanging out with James Maiden and Anthony McCrady, outside Jareika White's apartment. (Lucas and Jareika are siblings.) Lucas said that his group was sitting on the porch talking when Petitioner walked past and saw James Maiden. "[T]hey had a few words or whatever, so James got up, asked him did he want to fight, so the defendant turned around and started shooting." Lucas continued, "Then James ran in the apartment, he [Petitioner] shot through the apartment, shot my little niece and my cousin."

Lucas was referring to the fact that bullets struck 12-year-old Anthony McCrady and Jareika White's four-month-old baby. The baby was struck in the leg, and McCrady was hit in the right arm. Lucas estimated the Petitioner fired five or six times. He denied that he, Maiden, or McCrady had a gun on them that day. Lucas identified Petitioner in a photo lineup and again in court. Tr. 373-79.

Jareika White testified that she was in her apartment with her baby and visiting with some friends. She could hear two men arguing outside, but that did not deter her from walking out the front door to visit her sister "because in my apartment complex people argue a lot, so that's nothing new to hear somebody arguing." But as she stepped out the door with her baby in her arms, she immediately heard shots fired. She and others ran inside the apartment. They realized there was blood coming from the baby's leg, and the child was taken to the hospital. White identified Petitioner, who she knew vaguely as "Moon," in a photo lineup and in the courtroom. White testified that she saw Petitioner with a gun and firing the shots. She denied that James Maiden, Lucas Johnson, or Anthony McCrady had a gun. Tr. 380-87.

Detective Lane Smith testified that he investigated the crime scene, presented photo lineups to the witnesses, and obtained an arrest warrant for Petitioner. Smith told Petitioner that he was under arrest for murder, and Petitioner immediately asked, "Are you sure it's not attempted murder?" Smith asked Petitioner if he wanted to make a statement, and "He said, they shot at me first, he had a gun." Petitioner also said that he saw nine crime scene markers on the news, but he fired only three shots. Smith asked Petitioner if he realized that he shot a baby, and Petitioner said that he saw that on the news, but "I was not trying to, I was shooting back." Smith testified that Petitioner did not deny that he was the shooter, "but he described it as a(n) act of self-defense." Smith stated that Police found four .380 caliber shell casings at the crime scene. He explained that the crime scene markers were placed not only for shell casings but also articles such as clothing that would be photographed by investigators.

Defense counsel asked Detective Smith if he explored the possibility that Petitioner was returning fire as he claimed. Smith answered, "Yes, we didn't find any evidence that indicated that there was shots fired back." The investigation included an examination of the scene, interviews with witnesses, documenting bullet holes, and examining the entire area to determine if anything else was struck by bullets. Detective Smith conceded that it is possible a bullet hole could have escaped notice or that a shooter could have used a revolver that would not have expelled casings at the scene. But no eyewitnesses placed a gun in the hands of any of the persons targeted by Petitioner. Tr. 388-400. Detective Rod Johnson corroborated Detective Smith's account of the statements that Petitioner made when he was arrested. Tr. 401-04.

Anthony McCrady was 17 by the time of trial and incarcerated for simple robbery. He recalled that, on the day of the shooting, he did not go to school and was hanging around the apartment of his cousin, Jareika White. Petitioner walked by, and James Maiden asked him if he wanted to fight or something like that, "and then he just pulled out the gun." Petitioner said, "I ain't fixing to fight nary one of y'all, y'all ain't fixing to jump me." Then he pulled out the gun and started shooting. McCrady was hit in the upper right arm. He denied that he, James Maiden, or Lucas Johnson had a gun that day. Tr. 415-25.

The defense called or recalled witnesses, including Jareika White. Defense counsel asked her why there were 32 bags of marijuana in her apartment when police arrived. White said that she did not know, and a lot of people had rushed in after the shooting. She had no idea why the 32 bags were there. Tr. 425-28.

Quintrell Glover is Petitioner's cousin, and he was 14 at the time of the shooting. He testified that he and Anthony McCrady had been in an altercation at school when McCrady and other boys jumped Glover in late August or early September, before the September 14, 2007 shooting. Quintrell claimed that the students who attacked him "said something about my cousin, my cousin this, Orlando Glover or something and then that's when all of them punched me in the back of my head and I fell ...." He also described a relative's house getting "shot up" shortly before this incident, and he said Petitioner had been staying at that house. Tr. 428-36.

Tiesse Lattin, age 25, testified that Petitioner was her nephew and was living with her near the end of August or first of September in 2007 when shots were fired at her house. She never found out who did the shooting. Ms. Lattin said that she was with Petitioner at a Citgo station on Jewella at Greenwood when she witnessed Petitioner and James Maiden exchanging words. She said that James pulled a gun out of his car and threatened Petitioner, but all parties left without a shot being fired. The shooting at issue in this case took place a few weeks later. Tr. 436-43. Petitioner did not testify.

**B. State Court Decision**

Petitioner was convicted of two counts of attempted manslaughter, and he challenged the sufficiency of the evidence on appeal. Louisiana defined manslaughter as a homicide that would be second-degree murder, but the offense was committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31. The State must prove the defendant specifically intended to kill the victim and committed an overt act in

furtherance of that goal.  Specific intent may be inferred from the act of pointing a gun and firing at a person.  The doctrine of transferred intent allows a conviction when the defendant shoots at an intended victim with the specific intent to kill of inflict great bodily harm and accidentally kills or inflicts great bodily harm upon another person.  State v. Glover, 106 So.3d at 135.

Louisiana law provides that the use of force or violence upon the person of another is justifiable under certain circumstances.  Those include when the force or violence is committed for the purpose of preventing a forcible offense against a person, provided that the force or violence must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:18-19.

Petitioner argued on direct appeal that the evidence was insufficient to support his convictions.  In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The state appellate court reviewed the facts in detail, set forth the elements of the crime, and discussed state law applicable to the elements and self-defense.  The court noted that eyewitness testimony established that Petitioner pulled a gun and began shooting at Maiden after he challenged Petitioner to fight.  Petitioner admitted to police that he shot a

gun multiple times.  That evidence was deemed more than adequate to establish that Petitioner had the requisite specific intent to kill or inflict great bodily harm that resulted in injury to innocent bystanders.  The claim of self-defense was found lacking because there was no evidence that anyone other than Petitioner fired or even possessed a gun. Thus, the jury could have reasonably rejected Petitioner's claim (presented only in his initial statements to police) of self-defense.  State v. Glover, 106 So.3d at 134-37.

### C. Habeas Analysis

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus, a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews, 132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

Petitioner argues that the State failed to prove that he did not act in self-defense, that James Maiden's claim that Petitioner fired without provocation was unbelievable, and Petitioner's use of force was reasonable and necessary in light of Maiden's history of threatening Petitioner with violence.  None of these arguments demonstrates that the state

court's adjudication of the claim was an objectively unreasonable application of <u>Jackson</u> to the evidence.

There was no evidence, other than Petitioner's statement to Detective Smith, to support a claim of self-defense. The jury was well within its rights to reject the uncorroborated testimony of Ms. Lattin that Maiden had threatened Petitioner with a gun on a prior occasion. Petitioner argues that State witnesses were not credible because of their criminal history and involvement in drugs, but such credibility determinations are squarely within the province of the trier of fact. "[U]nder <u>Jackson</u>, the assessment of the credibility of the witnesses is generally beyond the scope of review." <u>Schlup v. Delo</u>, 115 S.Ct. 851, 868 (1995). The state court's adjudication of the <u>Jackson</u> challenge was reasonable and precludes habeas relief.

**Self-Defense Jury Instruction**

Judge Michael Pitman stated that he had held several bench conferences with the attorneys regarding the jury charge, particularly the charge on the burden of proof for self-defense in a non-homicide case. The Second Circuit, the appellate court for the relevant jurisdiction, had held that the burden of proof was on the defendant to show by preponderance of the evidence that he acted in self-defense. Other circuits had disagreed and placed the burden of proof on the State to prove beyond a reasonable doubt that the offense was not committed in self-defense. The Louisiana Supreme Court had not made a definitive ruling on the issue. Judge Pitman stated that he intended to charge the jury by describing self-defense as defined in the statute "and not inform the jury as to the burden of proof." Defense counsel John Bokenfohr acknowledged that he had participated in the

bench conference discussions and had "no objection to the Court's decision." The State also offered no objection. Tr. 444-46.

The judge later instructed the jury that the burden of proof was on the State to prove the defendant's guilt beyond a reasonable doubt. Tr. 459, 462. He instructed the jury on the elements of the various crimes such as second-degree murder and manslaughter, as well as the definitions of attempt, criminal intent, and the like. He read the jury Louisiana law regarding when the use of force or violence is justifiable, without mention of any particular burdens associated with proving justification. Tr. 465-66.

Petitioner argues that the trial judge erred when he did not give the jury any instruction on the burden of proof with respect to self-defense. When Petitioner raised this issue on direct appeal, the state court first determined that the lack of an objection by defense counsel precluded appellate review of the issue. But, it added, any error in the failure of the court to give such an instruction was harmless. That was because the general instructions were that the jury regard the State as having the burden of proving guilt beyond a reasonable doubt. The court determined that the evidence was sufficient to prove that Petitioner did not act in self-defense, and there was no showing that even a preponderance of the evidence could demonstrate self-defense. Glover, 106 So.3d at 137-40. Furthermore, had counsel insisted on an instruction, the court likely would have given one consistent with Second Circuit decisions that placed the burden on the defendant to prove self-defense by preponderance of the evidence. The instruction he actually received put a more onerous burden on the State, which was to his benefit. Thus, there was no prejudice stemming from the lack of an instruction. Id. at 140.

The State has raised a procedural bar defense to this habeas claim. The court may decline to address whether a claim is procedurally barred when the claim fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 n.1 (5th Cir. 1995). The undersigned elects to address this claim on the merits.

A state does not violate a defendant's due process rights when it allocates to the defendant the burden of proving an affirmative defense when that defense merely excuses conducts that would otherwise be punishable. Smith v. U.S., 133 S.Ct. 714, 719 (2013); Martin v. Ohio, 107 S.Ct. 1098 (1987). Accordingly, the state court could have lawfully instructed the jury in accordance with Second Circuit precedent and put the burden on Petitioner to prove self-defense. That the court elected not to do so and, instead, left the issue open and subject only to the general instruction that the State must prove guilt beyond a reasonable doubt was a benefit rather than a harm to the defense.

The state court adjudicated this claim on the merits, so habeas relief is available only if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has not pointed to any Supreme Court decision that obligated the trial judge to give a specific instruction regarding the burden with respect to self-defense. He has not, therefore, demonstrated entitlement to habeas relief with respect to this claim.

**Excessive Sentence**

Petitioner was born on October 17, 1989, so he was still 17 when he fired the shots at issue on September 14, 2007. He was convicted of two counts of attempted manslaughter and adjudicated a second felony habitual offender based on a prior conviction for illegal use of a weapon. The range of sentences available was not less than ten years nor more than 40 years. The sentencing judge noted that Petitioner had been on probation at the time he committed these crimes. The probation was imposed for a similar offense in which Petitioner had shot at someone's house after he had an argument or disagreement with them. The court considered these and other factors, including Petitioner's age of 17 at the time of the crimes, and found that the appropriate sentence was 35 years on each count, to run concurrently, without benefit of parole, probation, or suspension of sentence. The sentence was modified on appeal because the court erred in denying parole eligibility under the habitual offender statute. Tr. 480-86.

Petitioner argues, as he did on direct appeal, that his sentences were excessive because they placed him in jail for most of his adult life, and it served no legitimate purpose for a juvenile defendant to be sentenced so severely. The state appellate court reviewed the trial judge's reasons, including both aggravating and mitigating factors, and determined that the judge did not abuse his sentencing discretion. It particularly rejected Petitioner's argument that his age at the time of the offense had not been adequately considered. It found unpersuasive invocations of Graham v. Florida, 130 S.Ct. 2011 (2010) and Roper v. Simmons, 125 S.Ct. 1183 (2005), which concerned review of the execution of juveniles

and life sentences imposed without parole on juvenile non-homicide offenders.  State v. Glover, 106 So.3d at 140-42.

Petitioner argues that his sentence is inconsistent with Graham v. Florida and related jurisprudence regarding the sentencing of juveniles.  Graham held, "The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide."  Graham, 130 S.Ct. at 2034.  To show entitlement to habeas relief, Petitioner must demonstrate that the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  Section 2254(d).  The Supreme Court has explained that "clearly established Federal law, as determined by the Supreme Court," as specified in § 2254(d)(1), "includes only the holdings, as opposed to the dicta, of this Court's decisions."  Woods v. Donald, 135 S. Ct. 1372, 1376 (2015).  Federal circuit precedent does not suffice.  Kernan v. Cuero, 138 S. Ct. 4, 9 (2017). "Nor, of course, do state-court decisions, treatises, or law review articles."  Id.  Petitioner has not identified any Supreme Court holding that prohibits a 35-year sentence for a second felony offender who is 17 at the time he commits the offense for which he is sentenced.  If the Court has not established clear precedent with respect to a sentencing challenge, habeas relief is not available.  Lockyer v. Andrade, 123 S.Ct. 1166 (2003).

 **Brady** Claim

Petitioner claims that the State violated his rights under Brady v. Maryland, 83 S.Ct. 1194 (1963) when it did not disclose to the defense prior to trial (1) a police report that mentioned finding marijuana in Jareika White's apartment and (2) non-prosecution

agreements with State witnesses.  Brady held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Id. at 1196-97.  To establish a Brady claim a petitioner must establish that the evidence was (1) suppressed, (2) favorable, and (3) material. Wright v. Quarterman, 470 F.3d 581, 591 (5th Cir. 2006).

Petitioner argues that an investigation report not provided to the defense mentioned the finding of 32 bags of marijuana and other marijuana in Jareika White's apartment. Petitioner presented this claim in his post-conviction application.  The trial court denied the claim with the observation that "defense counsel cross-examined the witnesses about facts contained within the incident report and [] this shows that the report was properly disclosed."  Tr. 817.  The state appellate court denied a writ application "on the showing made."  Tr. 872.  The Supreme Court of Louisiana denied a writ in a per curiam that stated that "relator fails to show the state withheld material exculpatory evidence in violation of Brady … ."  Tr. 593.

Petitioner has not pointed to any facts to demonstrate that the state court's decision of this issue was incorrect.  Evidence is not "suppressed" if a petitioner either knew or should have known of the essential facts that would have permitted him to take advantage of any exculpatory evidence.  West v. Johnson, 92 F.3d 1385, 1399 (5th Cir. 1996).  The record reflects that defense counsel knew about the marijuana that was found and made use of it in his cross-examination.  The state court's rejection of this Brady claim was not unreasonable.

Petitioner also argued in his post-conviction application that the State did not disclose that it had reached some form of agreement with its key witnesses that they would not be prosecuted if they testified against Petitioner.  Petitioner makes this assumption based on the fact that Jareika White had drugs in her apartment, but she and James Maiden somehow escaped being prosecuted for possession with intent to distribute or similar charges.  The state trial court rejected this claim, noting that Petitioner merely asserted that a plea deal exists and "failed to offer any support for such a claim." Tr. 817.  The Supreme Court of Louisiana, as stated above, found that Petitioner failed to show that the State withheld material evidence in violation of <u>Brady</u>.  Petitioner has presented nothing but a bald assertion of a plea deal to the state courts and this court.  There is no evidence in support of this claim, so the state court's decision was not an objectively unreasonable application of <u>Brady</u>.

## Ineffective Assistance of Counsel

### A. Introduction; Burden

Petitioner argues that his attorney rendered ineffective assistance of counsel ("IAC") in several ways.  To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  <u>Strickland v. Washington</u>, 104 S.Ct. 2052, 2064 (1984).  Petitioner presented his IAC claims on direct appeal and in a post-conviction application.  The state court denied the claims on the merits.

Petitioner's IAC claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

**B. Jury Instructions**

Petitioner argued on direct appeal that the trial judge should have instructed the jury regarding the burden of proof on self-defense. Petitioner combined with that an argument that counsel rendered IAC by not insisting that the judge give such an instruction and because counsel did not ensure that jurors were "fully instructed" regarding the defense. He argued that the instructions did not tell the jurors that they should acquit if they found there was self-defense, did not include instructions on other portions of La. R.S. 14:19 regarding the right of a defendant to stand his ground, and lacked instruction on the use of evidence of prior threats and the dangerous character of a victim.

The state appellate court rejected the IAC claim with respect to a burden instruction, observing that it was arguable that counsel was fully aware that the lack of a specific instruction on the burden would ultimately benefit Petitioner. Such strategy decisions must be afforded great deference. Even if counsel made an error, the court reasoned, Petitioner could not demonstrate prejudice because the State's evidence conclusively established that

he did not act in self-defense.  State v. Glover, 106 So.3d at 140.  The appellate court did not specifically address the other IAC claims asserted by Petitioner, but it left no doubt that the IAC assertion was found to lack merit.  The Supreme Court of Louisiana denied writs on all claims without comment.

"Section 2254(d) applies even where there has been a summary denial."  Cullen v. Pinholster, 131 S.Ct. 1388, 1402 (2011).  A petitioner who challenges a state court's summary denial may meet his burden under the first prong of Section 2254(d) only by showing that there was "no reasonable basis" for the state court's decision.  The federal habeas court must determine what arguments or theories could have supported the summary decision, and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  Pinholster, 131 S.Ct. at 1402, citing Harrington v. Richter, 131 S.Ct. 770, 786 (2011).

A defendant is not entitled to a jury instruction on every possible issue related to his case.  The court and counsel try to craft instructions that set forth the elements of the relevant crimes and defenses, but not every collateral issue warrants a specific instruction.  "It is well established that jury instructions must be evaluated holistically, rather than in isolation."  Thomas v. Vannoy, 651 F. App'x 298, 302 (5th Cir. 2016).  And the mere absence of a jury instruction does not overcome the strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment.  Id. at 303.  The record in this case does not support the contention that counsel was acting below a standard required by the Sixth Amendment because he did not insist upon the specific

instructions now urged by Petitioner. Moreover, there is no reason to believe that the verdict might have been different had counsel requested (and the court given) such additional instructions. The state court's rejection of these IAC claims was not an objectively unreasonable application of <u>Strickland</u>, so the claims lack habeas merit.

### C. Failure to Call Witnesses

Petitioner argued in his post-conviction application that counsel was ineffective because he did not call two witnesses mentioned in a police report. An officer recorded in the report (Tr. 31) that upon arrival at the apartments, an (unnamed) employee of the complex told the officer "that a resident told her that she saw someone hand a gun to another blk male (after the shooting), and the blk male ran into apt #68 bldg 10." The unnamed employee said that the unnamed witness "told her that the guy who the gun was handed to didn't have a shirt." The officer made contact with a Demetrius Isaac outside of apartment 68, and it was determined that he "knows of the guy with no shirt." The report stated that an unnamed lady in apartment 82 saw four black males running after the shooting "and the passing of the gun," but she did not want to give her name. The officer noted that it was hard to get information from the witnesses because they were in fear of retaliation.

The state trial court acknowledged that Petitioner asserted a claim that counsel was ineffective because he did not provide evidence in support of the potential self-defense theory. The court rejected the claim because Petitioner "failed to attach any affidavits o[f] witnesses that might support such a claim." His allegations were found insufficient to satisfy his burden required under state post-conviction law. Tr. 816-17. The appellate

court and Supreme Court denied writs with summary findings that Petitioner failed to show that he received IAC under the standard of <u>Strickland</u>. Tr. 872, 953.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." <u>Evans v. Cockrell</u>, 285 F.3d 370, 377 (5th Cir. 2000). A petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." <u>Day v. Quarterman</u>, 566 F.3rd 527, 538 (5th Cir. 2009). Petitioner did not make this showing to the state court by affidavit or other evidence, and the police report indicates that the witnesses (often unnamed) were reluctant to be involved. His claim, therefore, lacks habeas merit under the requirements of Section 2254(d). <u>Cox v. Stephens</u>, 602 Fed. Appx. 141, 146 (5th Cir. 2015) ("Cox has failed, through affidavits or otherwise, to demonstrate that these witnesses would have testified ..."); <u>Gray v. Epps</u>, 616 F.3d 436, 443 (5th Cir. 2010) (petitioner failed to show uncalled witnesses were available to testify where affidavits did not contain statement to that effect); and <u>Evans</u>, 285 F.3d at 377 (reversing habeas relief when no affidavits were presented from the alleged witnesses).

### D.  Failure to Impeach

Petitioner argued in his post-conviction application that counsel rendered IAC because he did not impeach the State's key witnesses, James Maiden and Jareika White, with evidence about drugs found in White's apartment.  Petitioner argues that counsel

should have demonstrated that the State witnesses were likely engaged in dealing drugs, which would undermine their credibility.

The state trial court addressed this claim in conjunction with the assertion that counsel rendered IAC when he did not discover a plea deal that would also help impeach the State witnesses. The court found the claim lacked merit because Petitioner failed to offer any factual support or show prejudice.

Petitioner argues in this court that counsel should have presented to the jury a police officer's report that described the drugs found in the apartment. Counsel could not simply introduce a police report into evidence; it would be hearsay. What counsel did, however, was inform the jury through the testimony of a police officer that a large quantity of marijuana was found in the apartment. He also cross-examined Ms. White about the 32 bags of drugs in her apartment. Petitioner has not demonstrated that the state court's rejection of this claim was an objectively unreasonable application of <u>Strickland</u> to the relevant facts.

**Errors and Omissions in State Court Opinions**

Petitioner's appellate counsel filed an application for rehearing after the state appellate court issued its decision. Counsel argued that the court's opinion omitted or misstated several facts and did not specifically address all of his claims of IAC. Tr. 633-40. The appellate court summarily denied the application. Tr. 642. Petitioner now includes in his federal habeas petition claims that (1) the court omitted or misstated several facts essential to his allegations of error and (2) the court failed to address the bulk of his IAC arguments.

The State responds that Petitioner does not assert any federal basis for this claim, and mere errors of state procedural or other law do not permit habeas relief. The State is correct. The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011). The court has addressed above Petitioner's factual arguments as they relate to his other claims. To the extent the state courts did not specifically address certain claims, they were not required to do so. "There is no text in the statute requiring a statement of reasons" by the state court. Harrington, 131 S.Ct. at 784. The federal court reviews only the reasonableness of the state court's "ultimate legal conclusion," as distinct from the thoroughness or quality of its written opinion. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). These final claims also lack merit.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2018.

Mark L. Hornsby
U.S. Magistrate Judge